Good morning. May I please the Court? My name is Ethan Preston. I'm here representing Appellant Harold Holmes. I'd like to reserve five minutes. Sure. The crucial question in this case is whether or not a jury could have reasonably found that a debt collector in NCO's position should have been trying to review, should have attempted to review account notes given to it by the original creditor. If it had done so, it would have discovered the access restrictions. The record suggests the access restrictions were caused by some of NCO's own actions. They miscoded those accounts when they uploaded them to OASIS. And then finally, the access restrictions would have been fixed and they could have discovered the account notes. The reason that the lower court erred is because it did not even touch on the business-type buttons. Unfortunately, it's a technical – It's like clicking – the way I understood it is like clicking on a tab on your – like a bunch of tabs come up and you click on these tabs. Right. Like on your iPad. The tabs would change what you see in the disputable. Right. And the evidence is they never looked at any of the dispute fields. They never looked at predecessor – they never clicked those business-type buttons to see what their predecessors had recorded, what the upstream collection agencies had recorded. It's a difficult appeal because it's something that's easy to describe in pictures, but it's hard to describe in words. So I want to ask the panel, if you have questions about the facts, about what they did wrong – My law clerks explain that to me. Well, you have it in the brief, don't you? Yeah. Didn't you reproduce those in the – I did. I did. But I – it is – like I said, it's difficult – it's easy to show in pictures, hard to explain in words. And I want to make sure there's no questions. Like in a limited period of time with this panel, I want to make sure that there's – it's crystal clear what it is they did wrong. Okay. So they had access, but technologically they didn't utilize the tabs to get to the information. That's your argument, right? They did not initially have access. That's – we never got far enough to challenge that, but they've claimed, look, we never had access. Our point is that's not the point. You guys never tried to access those disputes. The analogy that we use in the brief is you have a locked box. A regional creditor comes to you and says, here's a list of debts. I want you to report to the credit reporting agencies. Here's a locked box full of consumer disputes. And they knew that there were disputes out there because that's in the OASIS manual. You don't even open the box to see that it's locked. If you never look at the box to see that it's locked and to see, oh, I need to get a key from the creditor, it doesn't matter whether it was locked or not. A reasonable debt collector tries to open the box to look at the disputes. They were never looking at the disputes. There's no evidence that they ever did that. In their requests for admission, they admitted we didn't know that there were any restrictions on our access until after you guys filed the complaint. That's not a reasonable debt collector. You have to be acting with reasonable diligence. It's a reasonably diligent debt collector. Do we know whose mistake it was that resulted in the locked data from the prior debt collectors? The record is not, unfortunately, as clear as I would like, but we do. It's NCO, if I can find that reference. Yeah, it's on the last sentence of page 6 of the reply brief. Cites to, you can get the excerpt of records, 69, the excerpt of record, 130, 227, and 245. Do we know what they would have discovered if they had clicked on the proper button? Yeah, we do. We do. Well, if they had just clicked on the button, they say, look, we didn't have any access to any of the predecessor dispute notes. So they saw nothing, which should have tipped them off. You know, these are, they're the tertiary debt collectors, so they're the last in line. I mean, would they have seen access denied, or would they have just gotten a blank screen, or what? Again, we don't know that for sure. There's nothing on the record to tell you that. But we do know that they had access to none of the data. They would have never seen any account notes. It's the Scott Declaration. Well, let's assume, I mean, your main point is they should have clicked on the button. Yes. Okay, now, if they had clicked on the button, it wouldn't have advanced the ball any, because the screen, you don't know what it would have said or what it would have revealed. If they were clicking on the buttons, they would have seen that they can't see any of the data. There's no account notes. Not just no disputes, but there's no data. They were never even looking at the predecessor data. That's in the second-to-last paragraph of the Scott Declaration. I apologize. So you're saying that it would have put them on notice that they weren't getting any prior information. Right. There's clearly a problem, because you're the last in line. Yes, since they were the third. Yeah, the fourth, actually, because they're the pre-collector. They're the end of the road. Right. So they should have seen. They should have been on notice that, by the way, there is no history. It's as if these accounts were never, nobody ever touched them, and that we know that's not the case, and they should have known that, because they were the last one. There's three other collection agencies working these accounts. How is that? Tell me how that works. So this is, we're dealing with AT&T's debt collection system. All the debt collectors, I can't say that, at least NCO gets a copy of the OASIS manual and is told, look, we store disputes in this OASIS system. The OASIS system, as I understand it, is used to effectively transfer and coordinate debt collection between the debt collectors. So how do we know, like, how does AT&T choose the first? Like, does the first one get the most commission if they collect on the debt? I mean, how does this system work? We never got that far, and it wasn't the selection of the AT&T debt collectors. Are we not sure this is the last debt collector? Yeah. Yeah, we are sure. Again, I think that's the Scott Declaration. That's paragraph 7 of the Scott Declaration. The point in time in which the Scott Declaration says, HOV discovered there was a certain access limitation on NCO user IDs, which prevented NCO users from full access to information in OASIS, including documentation by previous collection agencies. That's paragraph 9 of the Scott Declaration, Excerpt of Record 227. So there were signs that there was a big problem, that they weren't getting the whole picture, that there was data missing. There had to be, because they're the last in line, and they can't get any access, they say, to the people, the three other debt collectors that are working these accounts. They can't get anything, not just dispute information? Right. That's the record. I think they even say that in their – they may even say that in one of their briefs, their opposition brief. Do Your Honor have any questions about the law? I have no more questions about the facts. Why don't you reserve your time. I will. Thank you. Good morning. Good morning. May it please the Court, my name is Jim Schultz. I'm here on behalf of the Appellee NCO Financial Systems. This case, as you know, relates primarily with the FDCPA. The problem we see with the Plaintiff's argument, the appellant's argument here, is that it's presupposing something that's not contained within the law. All we hear about is, it is duty to investigate the account prior to credit reporting. The problem with the appellant's argument is that the source of that duty doesn't exist. It doesn't exist in the statute. It doesn't exist in case law. It doesn't exist in any expert opinion. We hear about, repeatedly, about what it is and is not a reasonable debt collector would have done. What should NCO have done? Should they have opened up this mysterious dispute box that is or is not locked? Well, we don't know because the Plaintiff hasn't given any evidence about what a reasonable debt collector should or shouldn't do. There's nothing in the record about that. So this whole standard of doing a reasonable investigation has been invented out of by the appellant because of a glaring error and problem with their case. Well, if I understand their position correctly, they say they were the third debt collector to take over this account. That's correct, Your Honor. So that means there were two other debt collectors who tried to done this guy. There's actually three, Your Honor. Okay. There's a pre-collect, first, second, and then this is tertiary. And when they're not able to collect from Holmes, they report to a credit reporting agency that this guy is delinquent in his account. Correct. And fail to report that the account was disputed. That's the claim, Your Honor. And if it is disputed and they knew or should have known that it's disputed, then they've made a mistake, right? That's absolutely wrong. Okay. Now they say they may not have known but they should have known because if they had pressed on this business button, they would have seen that they get nothing. You know, the information is blank. So that should have tipped them off that there's something wrong with the system. And they shouldn't have gone ahead to report him to the credit reporting agency before getting this thing fixed. And, Your Honor, assuming that there was this duty to investigate whether or not an account has been disputed before you credit report it, which we are not conceding, but assuming that duty exists, the problem becomes so what? Because had Edson So what? So they reported him as a delinquent without having checked to see if it's disputed. But if they would have checked, and I apologize for the loose language on this, but so what would have been if they would have checked? If they would have done this investigation that the appellant is asking the NCO to do, they wouldn't have found anything. And this idea that NCO should have known that there was a problem with their access limitations in OASIS because there was nothing there is just a wrong argument, Your Honor, for two critical reasons. First, NCO is expecting when they get these AT&T accounts for there to not be disputed accounts with them. Jim Scott testified that in his work with AT&T accounts since 1998, that generally speaking AT&T doesn't place disputed accounts with NCO. Generally speaking, sometimes they do, sometimes they don't. But the evidence bears that out here, Your Honor. Okay, but since they sometimes do and sometimes don't, you have to check, don't they? Your Honor, they didn't have to check because that goes back to the first point about whether or not there is this duty. There is no duty. But was Holmes' account disputed? The evidence directly suggests that Holmes had disputed his account years earlier directly with AT&T. Okay, so way before, and that should be in the OASIS data. It should have been. Right? Yes. And it was. It was and it wasn't. Assuming the facts, I mean, this is summary judgment, right? So we have to view the facts. It depends on from whose perspective you're looking at it. Right, but wait, this is summary judgment, right? So we have to view the facts in the light most favorable to the non-moving party. I understand that, Your Honor. But the objective facts are that when you look at the OASIS manual that HOV provided to the plaintiff in response to a subpoena, the disputes are there. But when you look at the OASIS data that NCO had access to, it undeniably is not there. There's not a disputed factual issue here. HOV had full access. And by the way, NCO was not responsible for the review. Okay, HOV had full access, but somehow there was a glitch in the system that when NCO if NCO had hit the button for the tab on disputes, and found nothing, it would have seen nothing. NCO would have seen that there was no disputes, which would have been consistent with what they would have expected. But isn't there a declaration that says that when they realized it was this problem, they were able to fix it within a couple days? HOV fixed it. And that's how we know that it was HOV's problem. HOV, when it was brought to HOV's attention that they had set a user limitation for NCO that prohibited NCO from seeing these disputes, HOV was able to fix it within six business days. Absolutely. There's no dispute about that. But here we're talking about a standard of what NCO knew or should have known. And the question is, should NCO have known that its user restrictions were limited? And they shouldn't have known that, because the manual that the plaintiff wants to rely on so extensively here undermines that very claim, because that manual told NCO that they were getting full access. They thought they were getting full access. And when they looked at the dispute tab, they would have seen exactly what they expected, which would be no dispute. He says there's more than just no dispute. There's no history which should have tipped them off that there's something to miss with the system. Well, and, Your Honor, that would go to a whole other question of what a debt collector needs to do to investigate a debt before trying to collect it. Well, why isn't that a summary judgment, I mean, a factual dispute? Maybe, I mean, they say a reasonable person would have seen there's not only no dispute, but there's no prior history. And they know they're the third company to try to collect it. So if there's nothing there, aha, you know, the light bulb ought to go off. There must be something. We're not getting everything we're supposed to get. And, Your Honor, perhaps there's an expert out there who would have said that. But there isn't any evidence of that. We have no evidence in this case about what a reasonable debt collector would do in that circumstance. All we know is what NCO did. And the plaintiff wants to engraft this reasonableness standard onto this case about what a reasonable debt collector should do and how NCO breached that duty by not doing this stuff. But there's no evidence about the standard of care that NCO owed. There's no evidence that NCO was obligated to go and check that. And what we know, Your Honor ---- What was the import of James Scott's declaration? Well, Mr. Scott, the critical aspect of what Mr. Scott testified to is twofold, Your Honor. First, he articulated the fact that it was HOV's access limitations in OASIS that prohibited NCO from noticing these disputes. NCO could have looked as hard as anybody could have wanted. They could have gone to the extremes to look for disputes. They wouldn't have found it. And Mr. Scott testified to that. Secondly, Mr. Scott testified to the very limited, and we're talking .003 percent of accounts that were placed by AT&T with NCO that ended up having a dispute here. It's one-third of 1 percent of these accounts had a dispute. There is no reasonable basis for NCO to have suspected that, A, their access limitations in OASIS were, in fact, limited, or, B, that any of these accounts should have been disputed, because that's not the way the system worked. And it goes back, Your Honor, to one of the questions you raised earlier sort of about how these accounts get paid. When we're dealing with a third level, the tertiary accounts, these tend to be very difficult accounts for debt collectors to collect. So if you're ---- Generally, how they get paid is actually the fresher or the newer the debt, the less they get paid, because those are easier to get paid. So when you're dealing with an account like this that's old and that's not likely to get paid, a company like NCO is not ---- their commission would be higher, because it's harder. So they either get it paid and they get a high commission, or they report it to one of the three credit rating companies? The reporting of the ---- of the trade line, of the account to the credit bureaus is part of the collection process. So when ---- at what point do they report it? Oh, it varies depending on circumstances and client requirements. In this case, Your Honor, the account was credit reported shortly after it was placed with NCO. That just seems problematic to me, because getting reported for bad credit with one of these three companies, as we saw in the earlier case, creates a lot of problems for the consumer. And when it's disputed, and the parties that are responsible for reporting truthful information to the credit rating agencies aren't acting, you know, appropriately with the right safeguards to make sure they're only reporting the correct accounts, that seems very problematic. Your Honor, there's no duty that's articulated in either the FDCPA or the Fair Credit Reporting Act that says an account needs to be investigated to determine its ballot before it gets reported. Well, isn't it should have known? Right. Normally should have known. Correct. And what the cases that interpreted 1692E8 really stand for is that should have known standard goes to whether or not the information of the dispute is readily available or accessible to the debt collector. Could the debt collector have readily put their hands on it? In the cases that we see where there is a violation of E8 occur in situations where a given representative of a debt collection company talks to a consumer and they give the debt or a letter comes in and they're in the notes. Let me ask you a question. I don't know how we're going to end up conferring about this or resolving this, but in a case like this, if the plaintiff were to prevail, what kind of damages or injunctive relief would happen? Well, under the FDCPA, the maximum statutory damages for a punitive class action like this would be 1 percent of NCO's net worth or $500,000. That's the maximum? That's the maximum. And then there's also a potential for actual damages as well, to the extent that you would prove up actual damages here. Let me ask you a hypothetical question. Let's just assume for the sake of my question, they know there's something wrong with the system that they're not getting all the information that they're supposed to have. Okay, I know you dispute that. Let's just assume they know that there's something wrong. They're not getting the whole history, including they're not getting dispute history. Can they go ahead then and report the debt? No, because I think in that situation, Your Honor, that becomes a situation akin to these cases where we see the violations, like the Smith case, for example, where there is evidence that puts the debt collector on notice that there is a dispute that they should go looking for. Okay. So I don't think that they know there's a dispute. They just know there's something wrong with the system. Okay. Now, the next step is they say they may not have known there was something wrong, but they had reason to believe there was something wrong because of the way the screen would respond. What's the answer to that? Three things, Your Honor. First of all, there is no evidence in this case one way or the other as far as whether or not NCOs given representatives are looking at the dispute tab in OASIS. That would be a count-by-count thing, but that's an aside. The answer to that, though, Your Honor, is that, no, there was no reason for NCO to suspect that there was a problem with OASIS. And it goes to a combination of the fact that NCO, when they did the licensing agreement with HOV Services and was provided a copy of the OASIS manual, they were told that they were given access to the dispute tab. HOV told them that they had full access. So there's nothing to give NCO a suspicion that they didn't have full access. You combine that with the fact that there's a dispute. There's a complete absence of notes. It wouldn't be something that the debt collector would ever look at, Your Honor. A prior treatment for something like earlier calls from an earlier agency would not be something NCOs did. Says who? I mean, I would think if you're third in line, you'd want to see what number one and number two did, wouldn't you? No. Every agency is going to have their own collection policy. Well, maybe. Maybe you're right. Maybe you're wrong. But, I mean, why isn't it logical to think that if there's a history that's made available to them, they will look at the history? Because, Your Honor, in a volume business like this, where there's over 700,000 accounts that got placed, it's not reasonable to suspect that NCO is going to pay people to go there and look at the voluminous notes for every one of these individual accounts to see what earlier agencies did. If the information is there, then doesn't it come under the should have known? I mean, they should. If the information is available, they should be looking at every account before they report them to the credit agency. Well, that's engrafting this duty of investigation before credit reporting. It doesn't exist in the law. So if we want to subject debt collectors to it. But what does should have known mean? Should have known means that is there information that is readily accessible to the debt collector that should alert them to the fact that there's a dispute? Could they have looked at something, like a dispute tab in OASIS, and found this dispute? And the undeniable evidence in this case is had NCO looked, they never would have found it. Through no fault of their own. And to finish your question, Your Honor, the second part of this as to why they shouldn't have known, in addition to the OASIS manual, is the fact that NCO and AT&T had a long history of working accounts like this. And disputed accounts don't get placed for collection to tertiary debt collectors like NCO. Because at that point in time, if they're disputed and the age of the account, they're already going to be difficult enough to collect. If they're disputed as well, it's a fool's errand to try to collect them. So AT&T wasn't placing those accounts. NCO had no reason to suspect that there was a dispute anywhere on Mr. Holmes' account. And if they looked, if they did the investigation, Your Honor, that you're suggesting should be done, they wouldn't have found it. It wasn't there. Was HOV sued? HOV was not sued. AT&T was, but not HOV. HOV does not have a duty under the Act? They might. If I was a nurse, I may have sued HOV. But does HOV have a duty? I mean, I would argue, if I was defending them, that no, they don't have a duty because they're not communicating with the consumer. You could bring them in. You could bring them into the suit, couldn't you? I mean, your client. Yes. If NCO had done something wrong, yes. But we don't believe that NCO did anything wrong. And that's why we feel that the district court's motion or order on summary judgment should be affirmed. Thank you. Mr. Shultz. Mr. Preston, you had some time left. There's four points I want to make. The first is the notion that there's no duty to investigate. That's not right. What he's asking you to do is to write 1692E8 out of the statute. That language should have known. It's never been interpreted as anything other than constructive knowledge. And that always means reasonable diligence. There's just no other argument on the record about what that could possibly mean. Now, what is reasonable diligence? That's just the trier of fact. What evidence do you have that had they clicked on the tab, they would have discovered that there was a problem? I have the Scott Declaration. Show me in the Scott Declaration where it says, had they clicked on it, they would have known. It's paragraph 9. There we go. Yeah, paragraph 9, ER 226. Yeah, I have it in front of me. Which sentence are you referring to? The last one. Sorry, I'm going to move on to the next page. HOV discovered there was a certain access limitation on NCO user IDs, which prevented NCO users from full access to information in OASIS, including documentation by previous collection agencies. Yeah, that's what HOV discovered when it was called in to prepare it. My question to you is, what do you have that NCO should have known there was something wrong? Because there's other, the OASIS has other fields besides the dispute fields. The notion that they shouldn't be looking at the prior account notes, that's just crazy. Well, I'm asking you what your evidence is, and not your opinion, but what's your evidence that they should have been tipped off that there was something wrong? I can't give you anything more than what's here to say they had no access to any of it, and the idea that they shouldn't have been looking, at least trying to find prior account notes before collecting on these debts and reporting on these debts. Look, some of these people, my client had an attorney at the time. He was represented. Under the FDCPA, you can't contact somebody you know is supposed to be represented. Those notes should have been in there. So they absolutely had to be looking through those notes to avoid violations of the FDCPA. And the fact that they didn't have access to any of it. I don't see where it says they didn't have access to any of it. Well, you have that sentence from. It says there was certain limited access. So don't they concede they didn't have access to it? Yeah, they concede they didn't have access. That's their whole point, is they didn't have access. But I think Judge Silverman's question is they didn't have access. What can you show me they didn't have access to any of it? And I can point to a sentence from page 8 of their brief. NCO lacked access in a way, it says, to the records of previous collection agencies. Full stop. If there's a question about what they should have seen going back down, and I can understand that's what you might be interested in, you understand we did ask for more time to complete discovery. And we weren't given that. That's in the very end of our opposition to the motion to compel. We did ask, I think it's Rule 56F. And we didn't get that discovery. Did the judge deny it, or he just didn't answer it one way or the other? Didn't answer it one way or the other, entered summary judgment. The other thing I want to draw your attention to, we mentioned that NCO was responsible for these problems. If you look at ER 255, it's in e-mails from HOV to NCO, the incorrect client code will affect your ability to view the prior OCA accounts. Please send Sherang a list of the Southwest Tertiary NCO accounts with the correct OASIS client code. It's NCO that had to upload the correct client code to fix the access problem. I need to sum up. There's a lot of questions about what they could have done, what they would have known, which is why summary judgment was inappropriate in this case. There's questions about what is the reasonable debt collector going to do? That's for the trier of fact. That's always going to be for the trier of fact. That's what the TSC case tells us. And finally, they bring up a lot of cases that there is no duty to investigate. All their cases, none of them deal with that should-have-known standard under the FDCPA. If you look at Clark, that's a situation in which this Court found, look, you knew that they had serious bookkeeping problems. You should have investigated and done a better job. Thank you, Mr. Preston. Mr. Schultz, thank you, too. The case has now been submitted. We'll stand and recess for this session. Lucy, thank you for your help this week.
judges: George, Silverman, Wardlaw